Good morning, Your Honor. On behalf of the State of Miami, I wish to reserve five minutes for... Five minutes? Yeah, for... All right. Reserve five minutes, please. Yes, Your Honor. In a nutshell, this case is about date and time of collection and it's about central facts and peripheral facts, Your Honor. I sent a letter, Your Honor, based on the Federalist of Appeal Procedure, Section 228J. A decision came out from this court, the case of Janel Singh, which was given on April 13, 2005, after the closure of briefing. The case is very, very, very, very on all fours with this case, Your Honor, and that case, Your Honor, all throughout this case, the IJ's adverse capability finding were based on minor inconsistencies. For example, the court, the immigration judge held that my client didn't know the petitioner did not stated that four people came to arrest her on July 1, 1998, and later on she changed to two people, and later on she changed to four people. Your Honor, in numerous cases before this court, Your Honor, the court has always held that minor inconsistencies that do not go to the act of the claim should not be basis for adverse capability finding. In this case, the issue is not whether four people came or two people came. The issue is that this petitioner was arrested. Secondly, there's an issue as to whether the people who came to arrest her were wearing uniform or were not. The issue is that this person, that four people came to arrest her, the clothes that they were wearing are unimportant. In fact, in the Janelle Singh case, the citation is 403F.3D1081. This court held that a month, a month, in that case the petitioner differed between his testimony before the asylum officer and the one in the court by a month. The court held that a month is unimportant, is minor, is a minor inconsistency. In this case, the IG held that because my client differed between 9 p.m. and lunchtime, my client, on the record, the petitioner testified at a certain stage that they came to arrest her at lunchtime. Later on she said at 9 p.m. Your Honor, that would be at most six hours. If this court could hold that one month is unimportant, six hours could not be important. And in the Janelle Singh case, the court held that date recollection and time recollection, Your Honor, involves a reconstruction process that is prone to inaccuracy. In fact, the court held that in asylum claims, in issues relating to dates and time, there are central facts and there are peripheral facts. The central fact, for example, as the court noted, the everybody could remember that only if they could attach it to an event that happened that could easily stick to their mind, that the time that it happened is always a constructed later in time and such is prone to inaccuracy. In fact, the court in this case referred to numerous articles by eminent, eminent professionals like Professor Michael Kagan and lots of them. They held that in case of sexual assault, asylum interviews, that when the petitioner is recounting the dates at a later event, the petitioner is always able to explain what happened to them, but there are always inaccuracies as to the time and the particular details. Again, in the Janelle Singh case, which is very mature to this case, in this case, most of the evidence that most of the, I couldn't go over it, the court held that the petitioner gave some evidence at the asylum office. The asylum officer was not invited, just as in Janelle's case. Again, in this case, the assessment to refer and other and the inconsistent and the documents that were held against my client, my client was not given notice as compared to Janelle's case. My client, based on fairness, as was held in Janelle Singh's case, my client ought to have notice of those adverse incredibility findings so that she could present facts in her favor against those facts. My client was never given the notice. It was at the hearing that those facts were admitted. And on the basis of Janelle Singh, those findings, Your Honor, they are not admissible against my client. May it please the Court, Joan Smiley from the Department of Justice here on behalf of the Attorney General. Of course, the key issue in this case is the adverse credibility finding by the immigration judge. And the primary means for a fact finder to determine whether the petitioner was credible was to determine whether her testimony had a ring of truth to it. Here, there were a number of contradictions about matters that went to the heart of her claim. The number of officers who questioned them at their house in July of 1998. Now, she corrected herself saying that first she said two and then she said, no, I mean four. Isn't that right? She did attempt to do that, but the testimony conflicted with the statements in her asylum application and declaration also as to whether they were in uniform or not. In one place she says they were in uniform. Another place says no, they were not. Inconsistencies as to who was the ruling party. Her declaration was very detailed. And then when she was asked these questions, alternatively, she stated three different groups were the ruling party in Ethiopia. She was asked and never did provide satisfactory explanations for these discrepancies. It's true, is it not, that there's a great deal of hostility between Ethiopia and Eritrea? In the Department of State reports in the record, it indicates that there is some difficulties between the two groups. They had a war. Weren't they at war or do I have the different countries? There's allegations of harassment and persecution against large numbers of people. Oh, okay. However, here, again, this is a critical difference from this case and the Singh case, which I believe counsel was referring to in his opening argument. In the Singh case, which he indicated in a 28-J letter was relevant, Singh was never asked about his father's statements that were different from his statements. Here, the petitioner, Ms. Weld, was asked specifically to explain these inconsistencies and was unable to do so. Also, Mr. Singh was not asked to explain inconsistencies between the asylum officer's report of the Ms. Weld specifically was asked to explain those differences. In Singh, the court noted that there was no evidence that the petitioner was under oath at the asylum interview or that an interpreter was present. Here, on the other hand, the record is clear at pages 113 and 114 that petitioner was under oath and had an interpreter present that she selected. So there's really very, I think, significant differences between this case and Singh. Is there any doubt that her family had to flee to Eritrea? Well, again, when there's an adverse credibility finding, it's hard to differentiate between what is true and what is not true. Well, I'm trying to determine, you said that there were discrepancies as to the core of her claim. Right. The discrepancies I cited as well as, for instance, she introduced a baptismal certificate that says that she's Ethiopian, not Eritrean. She testified that she does have an identity. But she can't explain on the basis that she is Ethiopian nationality. And to get a baptismal certificate in Ethiopia, she explained that her aunt probably had to say she was Ethiopian. And the corroborating witness testified, without any adverse credibility finding, that she was Eritrean. And there's not much doubt that she is Eritrean, isn't it? Again, the judge noted that in his decision, that it called into question her identity, because she testified she did have an identity document, but she had not asked anybody to send it. Well, you're going to a different document. You were talking about the baptismal certificate. Is there any doubt that she was, indeed, Eritrean and was baptized in Ethiopia? I would not be willing to concede that point, because based on the other incredible elements in the record, it's hard to state without any equivocation that, yes, she's Eritrean. What beyond the fact that there was some discrepancy between two and four and what they were wearing, what else was? Well, the facts, again, of who was the ruling party. In her declaration, she set out with very great detail, that's page 216 to 221 of the record, about who was the ruling regime and so forth. And then when she was asked at the hearing with an interpreter, she indicated three or four different groups. Also, there were discrepancies at the asylum interview, which the officer indicated and asked her about, and she was asked again at the hearing. She never was able to satisfactorily explain the discrepancies. What were those? The ones that I've just indicated. In addition, the administrative authorities determined that the confinement and mistreatment that she experienced in January of 2000 was not sufficient to establish persecution. Therefore, on that basis, she was denied relief. I mean, if you agree with her credibility, she was raped, among other things, right? Her testimony is that she was confined for ten days, beaten, and one night an officer came in and raped her. If you believe her, that's sufficient. If you believe her. But on the basis of all of her testimony, the judge found that even if she were credible, she had not shown enough, that it was an isolated incident. And as we indicated in our brief, there is case law, the Prasad case and others, indicating that a brief period of confinement and mistreatment is not necessarily, you know, enough to constitute persecution. Are you going to say to this court that ten days incarceration and rape is not persecution? Are you willing to make that statement? First of all, I think the question is, is it true? Did it occur? You mean assuming it occurred? If it's persecution, then I guess the next question would be, does she have a well-founded fear of future persecution? You haven't answered my question. It took just a yes or a no. I would have to say yes, Your Honor. But in any event, even if it were past persecution, there's no showing that there would be a well-founded fear of future persecution under the facts that have been presented. Therefore, we would submit that the immigration judge on the board made the correct decision and that the case can be easily distinguished from the same case, unless the panel has anything further, we would rest on our breasts. If we accept that she was persecuted, then the burden shifts to the government to show that she has no reasonable fear. Is that right? Shifting burdens are always tough, aren't they? Right, they are. You know, the case law can be a little bit confusing, hence my hesitation. She's a part of the presumption anyway. There's a presumption in the regulations to that effect. However, here, the immigration judge found in a well-reasoned decision that there was no persecution demonstrated, that there would be no well-founded fear if she were returned. And as well, there was the adverse credibility finding, which we cannot put aside. Therefore, we would submit that the decisions were correct and should be upheld by the court. Thank you. Mr. Obeyemi. Yes, Your Honor. Would you please address how you see the adverse credibility issue with respect of the claim made by the government that whilst at the asylum hearing the alien made detailed description of who was the ruling party in Ethiopia, at the hearing she seemed not to be so certain?  Actually, the correct position is that the alien in our asylum application gave detailed expression of the names and the acronyms of the ruling parties in Ethiopia and Eritrea. In fact, in Janelle Singh's case, at page – at page – at page – I'm not so concerned about the case. I'm concerned about your view of how you reconcile the fact pointed out by government counsel that at one time she seemed certain about who was in control in Ethiopia, and then the second time she wasn't, and that led to an adverse credibility finding against her. Your Honor, the names – the names – in fact, the appearance – the person has stated on record that she was confused about the – she was not a political person. She was not an active political person. Well, let's put it this way. In her asylum application, did anybody help her with that? Did she have a lawyer or anybody helping her with her asylum application? On record, as stated in the record, she was not represented by a lawyer. Can't you say yes or no? Yes, Your Honor. She was. Yes. So she had a lawyer or somebody that was helping her with the asylum application, and he put down all of her – she put down all her stuff. She gave the information to him, and he put them down. And then at her hearing, she's testifying – she's on her own. Yes. She's trying to explain that. Yes, Your Honor. But – Is that the reason? Yes. No, that was not the reason, Your Honor. The reason was that the names – Your Honor, the names – the names – She said she got confused. Yes. Yes. She said she got confused. She gave the names later, and she was asked why she mixed up the names. She was confused because the names are so similar. One is E-P-L-F. The one running in Eritrea is E-P-L-F. The one running in Ethiopia is E-P-D-L-F. They're so – Ethiopian people, democratic ruling faction – they're so similar in names. In fact – so that was the reason, Your Honor. But the major issue before the court, Your Honor, is not the acronym. It's not the name.  We should not lose sight of those – of the central issue in this case. Was the government in Ethiopia repressive? Was it persecuting people? Yes. So if a person could mix up the acronyms, whether it's E-P-D-L-F or E-P-L-F, would that take away the repressiveness of the government in Ethiopia? No, Your Honor. This lady was persecuted. And, Your Honor, the court in the Ntanusi case asked that the IG must take into consideration the application – So, omission – in fact, the court held that omission of a detail – omission of a detail is not a basis for aggressive credibility finding. As to the appellant's original ethnicity, an independent U.S. witness was called – U.S. citizen witness was called. That testimony remains unrefuted. In line with the case of GUI – G-U-I – where did this case – the case, the court held that unrefuted and non-talent corroboration testimony stands and is enough. In another case, SIDHU – S-I-D-H-U – the court held that appellant is not obligated to produce duplicative corroborative evidence. In this case, there was an independent witness who testified on her behalf. She was not mandated to produce a duplicative evidence. In fact, the regulation made by the government, which is 8 C.F.R. section 208.14, small c.1, says that the court is supposed to carry out a de novo hearing. The court is not supposed to rely on the notes made by the asylum officer. It is not binding on the court. The asylum officer is supposed to make a referral. So whatever decision made by the asylum officer is not binding on the court. Finally, the government says that 10 days and a rape is not enough to be prosecution, Your Honor. This is contrary to the holding of this court. So many cases, in fact, in a case called A-N-A-E-H-F-R-I-E-N-P-O-N-G, the court held that threat and matter of change. The court has held that threat to the applicant and his family was sufficient to demonstrate past prosecution. So there is a presumption of future prosecution in this case. Finally, in so many cases, minor inconsistency as to the clothes, as to the number of people, as to the name of the party, they are not important. There are so many cases like Baljeet Singh against Ashcroft, Manimbao, Guo, Mashri, so many cases in this circuit, Your Honor. Minor inconsistency are not enough to make adverse credibility in this case. Thank you, Your Honor. Thank you very much, sir. Thank you, counsel, for your argument.
judges: B. Fletcher, Thompson, Bea